RENDERED: APRIL 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0718-MR

LAVONTE GRACE                                                                 APPELLANT

v.          APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 20-CR-000347-001

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND LAMBERT, JUDGES.

CETRULO, JUDGE: Lavonte Grace appeals an order of the Jefferson Circuit

Court removing him from pretrial diversion, denying him probation, and

sentencing him to a term of imprisonment consistent with his prior guilty plea to a

class D felony offense. Upon review, we affirm.

# BACKGROUND

On February 5, 2020, Lavonte Grace was indicted in Jefferson Circuit Court on charges of robbery in the first degree (complicity); illegal possession of a controlled substance in the first degree, schedule II methamphetamine, while in possession of a firearm (complicity); illegal possession of a controlled substance in the first degree, schedule II cocaine, while in possession of a firearm; trafficking in a controlled substance in the first degree, schedule II cocaine, less than four grams, while in possession of a firearm; receiving a stolen firearm (complicity); and possession of a firearm by a convicted felon. On October 22, 2020, pursuant to the terms of a plea agreement with the Commonwealth, Grace instead pled guilty to a reduced charge of possession of a controlled substance in the first degree, schedule II methamphetamine, a class D felony, and was granted pretrial diversion. As set forth in the circuit court's order of that date, Grace's diversion was conditioned upon the following terms:

A. The period of Pretrial Diversion shall be 5 years.

B. The penalty to be imposed if the diversion is voided is three years.

C. The diversion is to be supervised.

D. The defendant shall not have access to a handgun or firearm during the pendency of the Pretrial Diversion.

E.  As required by KRS[1] 533.030(1), the defendant shall not commit another offense during the period of the Pretrial Diversion.  Specifically, the defendant shall have no violation of the Penal Code or the Controlled Substances Act, or any other criminal law.

On January 15, 2021, Grace was arrested and charged with new offenses, including but were not limited to:  (1) receiving stolen property $10,000 or more; (2) tampering with physical evidence; (3) fleeing or evading police, first degree; (4) possession of marijuana; and (5) violation of the circuit court's October 22, 2020 order prohibiting Grace from having access to firearms.  Due to Grace's new charges, the Commonwealth moved the circuit court to remove Grace from diversion and, consistent with his agreement, sentence him to a three-year term of incarceration.

On March 11, 2021, the circuit court held a telephonic diversion removal hearing.  Grace chose not to testify or call any witnesses.  The Commonwealth, on the other hand, called Probation and Parole Officer Nicolette Whalen, who verified Grace had voluntarily executed the diversion agreement which prohibited him from breaking the law or having any access to firearms.

The Commonwealth also called Joshua Arnwine, one of the Louisville Metro Police Department (LMPD) officers who had participated in Grace's arrest on January 15, 2021.  In sum, Officer Arnwine testified that at 3:29 p.m., he had

---

[1] Kentucky Revised Statute.

received a dispatch regarding three black males waving handguns[2] around a vehicle they were tinting at 1639 Prentice Street in Louisville.  He testified that when he arrived at the scene shortly thereafter, he witnessed three men fitting the description of the dispatch gathered around a white SUV, which Officer Arnwine confirmed had been reported stolen two days earlier and was valued at approximately $17,000.  He testified that the rear passenger side door was open; he observed Grace leaning inside that area of the vehicle; and that upon noticing his police cruiser pulling up, Grace and another of the three men[3] fled, despite Officer Arnwine's repeated commands for them to stop.  Officer Arnwine arrested the remaining man.  Meanwhile, LMPD officer J. Kerger, who had also responded to the dispatch and was attempting to locate the fleeing men, eventually caught and arrested Grace.

Upon searching the SUV, LMPD officers discovered a fully loaded AK-style rifle in the rear passenger area where Officer Arnwine had indicated Grace had been leaning into the vehicle.  Officers also discovered several pieces of window tinting material in the front passenger seat of the vehicle, along with four

---

[2] Officer Arnwine testified that when he arrived at the scene, he believed he saw a handgun in the waistband of Grace's pants and in the waistband of the pants of the unidentified man who escaped.  He further testified, however, that no handguns were ultimately discovered in the area or on Grace's person upon his arrest.

[3] Officer Arnwine testified the other man who fled and was never caught nor identified was standing at the driver's side door of the SUV when he arrived.

bags of marijuana on the driver's seat. Using a canine unit, they also located a fifth bag of marijuana – of the same appearance as the other four – in Grace's path of flight from the scene.

Recall, two of Grace's new charges stemming from his January 15, 2021 arrest were his alleged violation of the circuit court's October 22, 2020 order prohibiting him from having access to firearms; and his alleged violation of KRS 520.095, the statute applicable to fleeing or evading police, first degree. With that said, we pause to note two details that are the primary focuses of Grace's appeal – namely, Officer Arnwine's specific testimony regarding: (1) Grace's "access" to the rifle discovered in the backseat of the SUV; and (2) whether, as required by KRS 520.095(1)(b)2., his flight from the scene (which had caused Officer Kerger to give him chase) *also* caused or created a substantial risk of physical injury to any person. Regarding the former detail, Officer Arnwine testified:

> COMMONWEALTH: Okay, officer. In terms of the proximity or the access of Lavonte Grace to the AK-47, how close was he when you first arrived on-scene? How close was he to the AK-47?
>
> ARNWINE: About as close as you could be. I mean, he was, he was at, not only in the backseat, or on the backseat, back passenger door, he was actually leaned into the vehicle. All three subjects were leaned into the vehicle, and he was the only one that was leaning into the back seating area of the vehicle.

As to the latter detail, in its March 12, 2021 order removing Grace from pretrial diversion, the circuit court would later summarize Officer Arnwine's testimony as indicating, from Officer Arnwine's perspective, that Grace "endangered officers' lives by causing them to chase in busy traffic." Officer Arnwine also indicated in his testimony, however, that Officer Kerger did not arrive with him at the initial scene where the SUV was located; and that he did not assist Officer Kerger – who had arrived shortly afterward about a block or so away – in chasing Grace. In other words, Officer Arnwine could only speculate about the danger the chase presented. His specific testimony on that subject was as follows:

> COMMONWEALTH: And the foot chase that you described, with Lavonte Grace running from officers, where did that, did that take place in traffic? In streets? Describe that for us, please.
>
> ARNWINE: Yeah, so it was, the vehicle was backed into a driveway in that alley in the 1600 block of West Kentucky. He initially fled through some apartments that were being renovated to West Kentucky Street, and then caused Officer Kerger to have to run across West Kentucky Street, *I believe*, twice in order to continue pursuing Mr. Grace. *And West Kentucky Street generally has consistent traffic*.
>
> COMMONWEALTH: And therefore, were officers *potentially* put in danger of serious physical injury?
>
> ARNWINE: Yes, Officer Kerger was. Yes.

(Emphasis added.)

The circuit court also considered Arnwine's additional testimony that Grace's fingerprints or DNA had not as of yet been discovered on the bag of marijuana that had been found in Grace's path of flight; and that when Grace was arrested, the keys to the SUV were not on his person. Nevertheless, after considering what is set forth above, the circuit court removed Grace from diversion, explaining in relevant part:

> The Court finds that Defendant has violated the terms and conditions of his felony diversion. The Court showed Defendant tremendous mercy by offering him diversion on very serious felonies. The testimony at the removal hearing revealed Defendant was involved in a disturbing series of crimes on January 15, 2021, a mere three months after being diverted. Clearly, Defendant fled from the police, which alone would violate his diversion. Moreover, the proof is uncontroverted that Defendant had access to firearms, unlawful narcotics, and a stolen vehicle. Leaving him on diversion would be futile and would do a disservice to those who strive to comply with diversion and the law.
>
> The Court gave due consideration to the nature and circumstances of the crimes, and the history, character, and condition of Defendant. The Court is of the opinion that continued diversion should be denied for the following reasons:
>
> A. There is a substantial risk that during a period of diversion, Defendant will commit even more crimes;
>
> B. Defendant is in need of correctional treatment that he has declined to complete voluntarily;

C. Continued diversion would unduly depreciate the seriousness of Defendant's crimes and misdeeds while on diversion;

D. Defendant's failure to abide by the conditions of supervision constitutes a significant risk to prior victims or the community; and

E. Defendant's continued diversion risks the safety of the public. An alternative sanction was considered by the Court, but rejected as inappropriate.

Wherefore, IT IS HEREBY ORDERED that this matter is continued for a sentencing hearing on May 19, 2021, at 1:15 p.m. The Division of Probation and Parole shall prepare a written presentence investigation report.

Prior to the May 19, 2021 sentencing hearing, Grace moved the circuit court to reconsider its order of removal based upon new evidence which he believed materially contradicted Officer Arnwine's testimony that he had been observed leaning inside the back passenger side of the SUV where the rifle had been located, and that his flight had placed officers at potential risk of serious injury. The new evidence in question consisted of footage from Arnwine's and Kerger's body cameras of the events surrounding his January 15, 2021 arrest. Regarding that footage, Grace emphasized that when Arnwine's body camera was able to clearly depict the back passenger door of the SUV, the door to the vehicle appeared to be closed. Also, he correctly pointed out, Officer Kerger's body camera demonstrated that the streets Kerger ran up and down over the course of their roughly two minute chase were free of any traffic; that Kerger could have

chosen to run on the sidewalk instead; and that he was no longer running, and had stopped, when Kerger finally caught him.

Apart from that, Grace argued the Commonwealth had adduced insufficient evidence demonstrating he was guilty of his new charges. In that respect, he asserted that nothing produced by the Commonwealth indicated he knew or had reason to know the SUV was a stolen vehicle; that flight alone was not enough to prove fleeing or evading police, first degree; and that he was never found in possession of a firearm when he was arrested.

At the onset of the sentencing hearing, the circuit court indicated it had reviewed Grace's written motion to reconsider; it was unsure about the propriety of Grace's motion; but that it would nevertheless consider his motion and hear oral arguments pertaining to it. It added that it had reviewed the body camera footage in question and did not "think that the body cams support [Grace's] argument, or at least don't contradict the findings that the court made at the last hearing. So, I'm inclined to go ahead with the sentencing today, but I will allow [defense counsel] to say whatever you'd like when you make the request for probation today." Afterward, Grace, through counsel, reiterated the arguments set forth in his written motion.

Upon consideration, the circuit court rejected Grace's arguments, as well as his further argument for probation as opposed to incarceration. In its

May 20, 2021 judgment of conviction and sentence, consistent with what it stated at the hearing on the prior day, the circuit court explained, "At the onset of the hearing, the Court noted Defendant's motion for reconsideration was procedurally improper. Nonetheless, the Court reviewed the two bodycams and was unpersuaded to modify its decision for the reasons stated on the record." The circuit court's judgment then set forth the relevant substance of Grace's diversion agreement; and, in sentencing Grace in conformity with the three-year period of incarceration associated with his guilty plea set forth above, the circuit court made the following relevant determinations:

> The Court gave due consideration to the nature and circumstances of the crime, and the history, character, and condition of Defendant. The Court is of the opinion that probation, probation with an alternative sentencing plan, or conditional discharge should be denied for the following reasons.
>
> A. There is a substantial risk that during a period of probation, probation with an alternative sentencing plan, or conditional discharge, Defendant will commit other crimes;
>
> B. Defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional facility;
>
> C. Probation, probation with an alternative sentencing plan, or conditional discharge would unduly depreciate the seriousness of Defendant's crimes;

D. Defendant's failure to abide by the conditions of supervision constitutes a significant risk to prior victims or the community; and

E. Defendant cannot be appropriately managed in the community and risks the safety of the public.

Following the circuit court's order, Grace filed the instant appeal. Additional facts will be discussed as necessary in the context of our analysis.

## ANALYSIS

A circuit court's decision to void pretrial diversion uses the same criteria as a decision to revoke probation. *Richardson v. Commonwealth*, 494 S.W.3d 495, 498 (Ky. App. 2015); KRS 533.256(2). "A decision to revoke probation is reviewed for an abuse of discretion." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (citing *Commonwealth v. Lopez*, 292 S.W.3d 878 (Ky. 2009)). "Under our abuse of discretion standard of review, we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). "Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (citing *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004)).

A circuit court has "broad discretion in overseeing a defendant's [diversion], including any decision to revoke[.]" *Andrews*, 448 S.W.3d at 777. Historically, a circuit court could remove a person from diversion if there was evidence that the defendant failed to comply with the conditions of diversion, or was not making satisfactory progress toward the completion of the provisions of the diversion agreement. KRS 533.256; *Ballard v. Commonwealth*, 320 S.W.3d 69, 73 (Ky. 2010). The Kentucky General Assembly qualified the circuit court's discretion when it enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 (HB 463),[4] in 2011. *Andrews*, 448 S.W.3d at 776. With that package and the creation of KRS 439.3106, the General Assembly provided new criteria for voiding diversion. Specifically, KRS 439.3106(1) provides that supervised individuals shall be subject to:

> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

> (b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

---

[4] 2011 Ky. Acts ch. 2 (HB 463) (eff. March 3, 2011).

Since HB 463, to void diversion, the trial court must find by a preponderance of evidence: (1) that the diversioner violated a condition of diversion; (2) that the violation constitutes a significant risk to prior victims or to the community at large; and (3) that the diversioner cannot be appropriately managed in the community. KRS 439.3106; KRS 533.256(1); *Andrews*, 448 S.W.3d at 778-79; *Richardson*, 494 S.W.3d at 499.

With that in mind, we now proceed to Grace's arguments on appeal. To begin, Grace makes three somewhat interrelated and unpreserved procedural arguments. First, he contends the circuit court's March 12, 2021 interlocutory order removing him from pretrial diversion was deficient because it did not specifically indicate that he could not be appropriately managed in the community, per KRS 439.3106(1). Second, he argues the circuit court's statement in its final order of May 20, 2021 – that his motion for reconsideration was "procedurally improper" – violated his due process rights. Third, he argues that when the circuit court "nonetheless" reviewed his motion for reconsideration, it did not "meaningfully" review it because the circuit court had already, in his view, apparently decided to deny his motion without first hearing his oral arguments.

We disagree. To be sure, circuit courts are required by statute, prior to removing individuals from pretrial diversion or probation, to make a finding to the effect that the individual in question cannot be appropriately managed in the

community. *See* KRS 439.3106(1)(a); *see also Richardson*, 494 S.W.3d at 498 (explaining the findings required by KRS 439.3106(1)(a) must be made when voiding pretrial diversion). And, a circuit court's failure to make such a finding is reviewable by this Court, even if the error was unpreserved below. *See Walker v. Commonwealth*, 588 S.W.3d 453, 457-59 (Ky. App. 2019) (applying palpable error review under Kentucky Rule of Criminal Procedure 10.26); *see also Burnett v. Commonwealth*, 538 S.W.3d 322, 324 (Ky. App. 2017).

That said, Grace's argument that the circuit court failed to effectively find that he could not be appropriately managed in the community (*i.e.*, his *first* unpreserved argument) is undermined by his *second* unpreserved argument. As Grace notes in the context of making his *second* unpreserved argument, the circuit court's order removing him from diversion was interlocutory, and circuit courts have broad authority to modify and revise their interlocutory orders. Moreover, interlocutory orders are deemed *readjudicated* upon the entry of a final order disposing of all remaining issues in a given action. *See* CR[5] 54.02(2). Here, in its May 20, 2021 final order of sentencing, the circuit court explicitly found that Grace "cannot be appropriately managed in the community[.]" Because the circuit court's May 20, 2021 order both included that finding, and effectively

---

[5] Kentucky Rule of Civil Procedure.

readjudicated the prior March 12, 2021 interlocutory order, it cured what Grace now perceives as the deficiency of the March 12, 2021 order.

As to Grace's second unpreserved argument, it is undermined by his *third*. True, the circuit court indicated its belief that his motion to reconsider was improper. But, the circuit court's statement to that effect did not deny him due process; as Grace points out in this third argument, the circuit court "nonetheless" considered his motion and addressed it on the merits.

As to his third unpreserved argument, the circuit court did express misgivings about Grace's motion for reconsideration at the onset of the May 19, 2021 hearing. Prior to that time, however, it had already reviewed Grace's written motion and considered the full extent of his arguments and supporting evidence; and during the hearing, prior to its final disposition of this matter, it nevertheless provided Grace an opportunity to be heard regarding his motion – at which time he merely reemphasized the substance of his written motion. Grace cites no authority – and we have found none – indicating that circumstances such as those could give rise to a due process violation, let alone a due process violation that exceeds the threshold of harmless error.

Having determined Grace's unpreserved procedural arguments lack merit, we now proceed to his substantive arguments. First, Grace asserts the circuit court removed him from diversion and denied him probation based upon

less than a preponderance of the evidence. In that respect, he contends the circuit court erroneously believed that his flight from authorities on January 15, 2021, placed Officer Kerger in danger; and that no evidence was adduced indicating he *knew* the SUV had been stolen.

Grace is correct and indeed fortunate that, from all appearances of Officer Kerger's body camera footage, his flight did not place Officer Kerger or anyone else in danger. Likewise, the record before us bears no indication of whether Grace knew the SUV was stolen. While the circuit court cited those factors as reasons for removing him from diversion, they were not the *only* reasons. Indeed, the plain language of KRS 439.3106 does not require more than *one* violation.

That, in turn, leads to Grace's next argument. He asserts the circuit court removed him from diversion and denied him probation because it erroneously believed he had "access" to a firearm, in violation of his diversion agreement, shortly prior to his arrest on January 15, 2021. In that vein, he contends the footage from Officer Arnwine's body camera completely contradicts Officer Arnwine's testimony about spotting him leaning into the rear passenger side of the SUV (where the AK-style rifle was located) upon arriving at the scene.

We disagree. As set forth in its March 12, 2021 order, the circuit court stated that "the proof is uncontroverted that Defendant had access" to a

firearm. The circuit court later explained on the record during the subsequent May 19, 2021 hearing what it meant by that statement, noting that Grace had offered no testimony or other evidence contrary to Officer Arnwine's testimony, and that the footage from Officer Arnwine's body camera was inconclusive in that respect.

This Court has also reviewed the footage in question, and we are left with the same conclusion. The footage begins from the vantage point of the interior of Officer Arnwine's cruiser as it makes a right turn and quickly proceeds down an alleyway behind a series of residences and apartment buildings. There are then approximately 20 seconds of footage between when the driver's side of the white SUV comes into view from behind the windshield of cruiser as it closes in on the scene, and when the back rear passenger door of the SUV becomes visible. During that time, Officer Arnwine stops his cruiser, turns to the left to exit his cruiser, which causes the body camera footage to focus for a few moments upon the floor of the vehicle, and then in the opposite direction of the SUV. Then, as Officer Arnwine approaches the scene shouting commands for the fleeing suspects to stop, his gun is drawn and blocks any view of the back rear passenger door. After he turns to the right to arrest the remaining suspect – at which point Grace had already fled – the back rear passenger door can be seen, and it is closed.

When Grace noted during the May 19, 2021 hearing that the back rear passenger door is closed when it finally comes into view in the footage, the circuit court stated – as Grace now emphasizes in his brief – "What if he closed the door right before he started to run?"  Contrary to Grace's characterization, however, that statement does not indicate the circuit court relied upon speculation and conjecture to support the notion that he had access to a firearm.  Rather, the circuit court was weighing Officer Arnwine's testimony that he had witnessed Grace leaning into the SUV where the AK-style rifle was located *against* what Grace believed detracted from that testimony (*i.e.*, the body camera footage); and after doing so, the circuit court concluded the body camera footage was not enough to render Officer Arnwine's testimony unreliable or less than a preponderance of the evidence.  Considering the foregoing, we agree with the circuit court; and we find no error in the circuit court's decision to cite it as substantial evidence that Grace violated the terms of his diversion prohibiting him from having access to firearms.

Other bases of the circuit court's removal order were, as indicated, Grace's alleged access to and possession of narcotics, and tampering with evidence – relating to the four bags of marijuana found in the SUV that Grace was seen leaning into by Officer Arnwine, and the fifth bag of the same appearance that was later discovered in Grace's flight path by a canine unit. The evidence adduced was sufficient to satisfy the preponderance standard.

Grace's final argument is that the circuit court's finding that he could not be "appropriately managed in the community[,]" for purposes of KRS 439.3106(1), "is not supported by evidence at the hearing. There was no discussion or proof that Mr. Grace had declined any kind of treatment."

We disagree. "[W]hile HB 463 reflects a new emphasis in imposing and managing [diversion], it does not upend the trial court's discretion in matters of [diversion], provided that discretion is exercised consistent with statutory criteria." *McClure*, 457 S.W.3d at 731-32 (quoting *Andrews*, 448 S.W.3d at 780). Over the course of the orders it entered in this matter, the circuit court explicitly considered the criteria under KRS 439.3106, finding Grace posed a significant risk to the community at large and could not be appropriately managed in the community. The circuit court based its conclusions upon substantial evidence that Grace: (1) willfully disobeyed an officer's directive to stop, and instead fled from arrest; (2) accumulated new criminal charges a mere three months after being placed on diversion; and (3) accumulated new criminal charges that, like his previously diverted charges, consisted of serious offenses involving firearms and narcotics – indicating Grace remained engaged in his same pattern of criminal misconduct notwithstanding his placement on diversion, and that he continued to present a danger to the community.

The circuit court's order was based upon its weighing of the testimony presented at the evidentiary hearing and issued after considering the statutory criteria of KRS 439.3106. We decline to second guess the circuit court's decision. "[T]he importance of certain facts is not ours to weigh on appeal, but is properly left to the trial court's exclusive discretion." *McClure*, 457 S.W.3d at 734. Even though "another judge may have opted for a lesser sanction, the trial court's decision . . . was neither arbitrary nor unreasonable." *Andrews*, 448 S.W.3d at 781.

## CONCLUSION

In light of the foregoing, we AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Jazmin P. Smith
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky